W. EUGENE DAVIS,
Circuit Judge, dissenting.
Because I believe Dr. Adams is entitled to qualified immunity as a matter of law, I dissent.
I.
This case boils down to a disagreement between Dr. Kovacs, the acting Medical Director of the Wynne Unit where Hall was incarcerated (and whose testimony plaintiff relies on) and the defendant, Dr. Adams, the Regional Medical Director, who was in charge of medical care for inmates incarcerated in prisons in a multi-county region including the Wynne unit. When an x-ray of Hall’s lungs showed an abnormality that needed further investigation, Kovacs got permission from Dr. Adams to refer Hall to a medical specialist at the medical unit located at the Estelle Unit in Galveston. Arrangements were made to transfer Hall to the Estelle Unit for this medical examination and Hall refused the referral and signed a form ac *253 knowledging this refusal. When a tumor developed several years later and Hall died, his survivor complains that the defendant is responsible for administering a system which permitted Hall to fall through the cracks so that further consideration was not given to a follow-up referral.
It is true that Dr. Kovacs complained long and loud to Dr. Adams about many features of prison medical care offered to the inmates. The only complaint that is relevant to this case is his argument that a better tracking system (preferably computerized) should have been put in place to track appointments and make sure that an inmate who missed an appointment would not get lost in the system and assure that the necessary follow-up action could be taken.
Dr. Adams did not ignore Dr. Kovacs’s complaint and recommendation for an improved tracking system. The summary judgment record reflects that she responded to his complaint by making it clear that she believed the most efficient and effective system was for the physician at the local prison unit to maintain control over tracking missed appointments. In light of the correspondence between Drs. Kovacs and Adams in the record, Hall’s statement in his affidavit that Dr. Adams ignored Dr. Kovacs’s complaint about an improved computerized tracking system apparently meant that Dr. Adams did not comply with Dr. Kovacs’s recommendation.
The plaintiff complains about a number of other deficiencies in the prison medical system such as the deplorable living conditions in the medical unit in Galveston where Hall was to be transferred for his referral examination. Apparently the substandard living conditions in the Estelle Unit, as compared to the Wynne Unit, are the reason Hall declined the transfer and the referral examination. Dr. Adams, as Regional Medical Director, had no control over the prison conditions at the Estelle Unit in Galveston and the majority does not find otherwise.
II.
A.
First, Hall’s summary judgment evidence fails to establish any nexus between the allegedly flawed policy and his injury. The tracking system that was in place worked. Dr. Kovacs initiated the process when he made the clinical decision to refer Hall for the CT scan. Dr. Adams approved the CAT scan referral. When Hall refused the referral, TDCJ policy provided for physician review to determine whether further action was indicated. Under that policy, it was up to the local unit physician to make a clinical decision whether or not to reschedule an appointment. Lloyd Ash-berger, a physician’s assistant on Dr. Ko-vacs’s staff was given Hall’s chart on December 5, 1997, the day after Hall refused the referral on December 4. Mr. Ashber-ger noted in Hall’s chart that no appointment would be rescheduled until approved by the unit physician consistent with TDCJ policy. He recommended the alternative of repeating the x-ray on Hall’s next clinic visit in lieu of the CT scan. A repeat x-ray was made approximately one year later and no change was observed in the nodule and no referral was recommended by the radiologist. So Hall’s case did not fall though the cracks. His refusal to accept the referral was called to the attention of the Wynne Unit medical staff the very next day and the staff exercised their judgment about the appropriate action to take.
Also, the record reveals that it was not uncommon for Hall to refuse a referral to Galveston for medical evaluation. From October 1993 to August 2001, Hall was referred to Galveston seven times for vari *254 ous complaints and he refused to go on the last five referrals. On the June 7, 2001 referral, Hall refused to go for a pulmonary evaluation even after he was counseled and urged to go following a determination that he had a five centimeter density in his right lung and was coughing up blood. Accordingly, a reasonable fact finder could not infer that Hall would have kept an appointment in 1997 or 1998 when he had no symptoms and when x-ray findings were much less significant. Thus, the alleged flawed policy did not cause Hall to go untreated or cause any right he might have to be violated. Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir.1987).
B.
I also disagree with my colleagues that the summary judgment evidence reveals conduct by Dr. Adams that was unreasonable in light of clearly established law.
Identifying the specific conduct of the defendant that the plaintiff complains of is critical because it is that conduct that must be examined to determine whether the defendant’s acts were objectively reasonable in light of clearly established law. As Judge Garwood stated in Thompson v. Upshur County, 245 F.3d 447 (5th Cir. 2001), “when a defendant moves for summary judgment based on qualified immunity, it is the plaintiffs burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution.” (Id. at 460, emphasis added). As stated above, the conduct of the defendant the plaintiff complains of is Dr. Adams’s failure to comply with Dr. Kovacs’s request to implement an improved tracking system instead of relegating this function to the local unit medical director. Thus, unless all reasonable jail officials would recognize the unconstitutionality of implementing a system for tracking medical appointments for inmates under the supervision of the medical director in each prison unit rather than putting in place a computerized system then Dr. Adams actions were objectively reasonable. Given the absence of even a single case constitutionally requiring the implementation of any particular type of tracking system, it cannot be said that all reasonable jail officials would recognize the unconstitutionality of Dr. Adams’ actions.[40]
C.
Finally, Dr. Adams’s decision to track transfers on a local, rather than system-wide basis, does not amount to deliberate indifference toward the medical needs of inmates subject to the system. Dr. Adams’ communication with Dr. Kovacs clearly reflects that she considered his proposed solution and simply disagreed with it. In order to demonstrate deliberate indifference, “the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.” Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 755 (5th Cir.2001)(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).
Leaving the decision to the local medical director to decide whether a repeat appointment should be made is particularly sensible when the inmate refuses the initial appointment. Under these circumstances, a reasonable fact finder could not conclude that Adams was unreasonable in leaving to the local medical unit the task of discussing the prisoner’s medical condition *255 and the proposed diagnostic tests that might be needed. This is the procedure required under written policies promulgated by the TDCJ, which Dr. Adams was required to follow. Plaintiff does not suggest what other rule Dr. Adams should promulgate or propose be promulgated that would apply universally to track appointments for referrals inmates refuse. Dr. Adams was not deliberately indifferent because she did not agree with Dr. Kovacs that a different system for tracking referrals would be better or more effective than the system that was in place which required the local unit physician to decide whether another appointment should be made. See also Southard v. Texas Board of Criminal Justice, 114 F.3d 539.
For the above reasons, I respectfully dissent.

. This precisely tracks the analysis of the court in Thompson at 460.